UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIAS MERHI, et al.,<br><br>　　　　　　　　Plaintiffs,<br><br>v.<br><br>LOWE'S HOME CENTER, LLC, et al.<br>　　　　　　　　Defendants. | Case No.: 22cv545-LL-MMP<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ARBITRATION AND DISMISS REPRESENTATIVE CLAIMS**<br><br>[ECF No. 23] |

　　　This matter is before the Court on the Motion for Order Compelling Individual Arbitration and Dismissing Representative Claims, filed by Defendant Lowe's Home Centers, LLC ("Lowe's"), the only named Defendant in this case. ECF No. 23. Plaintiffs filed a response in opposition to the Motion [ECF No. 25], and Defendant filed a Reply [ECF No. 26]. Both Defendant and Plaintiffs filed notices of supplemental authority reiterating their positions in light of the Supreme Court of California's decision in *Adolph v. Uber Techs., Inc.*, 532 P.3d 682 (Cal. 2023), which was decided while this Motion was pending. ECF Nos. 54-55. The Court finds this matter suitable for determination on the

papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1. Upon review of the parties' submissions and the applicable law, the Court **GRANTS IN PART** the Motion with respect to the motion to compel Plaintiff Graham to arbitration and **DENIES IN PART** the Motion with respect to dismissal of the PAGA Plaintiffs' representative claims. For the reasons set forth below, the Court will hold a bench trial on the limited issue of whether a valid arbitration agreement exists between Plaintiff Reyes and Defendant on January 18, 2024.

## I.     BACKGROUND

Plaintiffs originally filed a proposed class action complaint against Defendants in the Superior Court of the State of California for the County of San Diego on February 15, 2022, alleging various wage-and-hour violations against Defendant Lowe's and DOES 1-50. ECF No. 1-5. Defendant timely removed the action to this Court on April 20, 2022. ECF No. 1. Upon joint motion of the parties, the Court extended the parties' briefing deadlines pending the outcome of *Viking River Cruises, Inc. v. Moriana*, and the Supreme Court issued its decision in that case on June 15, 2022. 142 S. Ct. 1906 (2022).

Following the ruling in *Viking River*, Plaintiffs filed their first amended complaint ("FAC") on July 22, 2022. ECF No. 17. Subsequently, the Court granted the parties' joint stipulation and motion to submit the individual claims of the following plaintiffs to arbitration, and to stay each plaintiff's respective claims pending the outcome of arbitration: Elias Merhi (including his individual claims under the Private Attorneys General Act of 2004 ("PAGA")), Cal. Lab. Code. §§ 2698 et seq., Nicholas Sevilla, Sean O'Neil, Jose Ramos IV, Megan Chambers, Rachel Wilkinson, Ellen Benton, Matthew Stransky, Alexander Olson, Wanda Allen, Sean Carpenter, John Enright, Pamela Lehman, Tyler Wintermote, Jennifer Strauss, Tracy Wilkins, Richard Silvas, Gloria Molano, Donna Villanueva, Naeemah Rehn, Kimberly Underwood, Nathan Winston, Stephan (Steve) Sellin, David Williams, Cristina Marshall, Tammy Pizano, Jimmy Padilla, Marcus Kastel,

2

and Mark Rodriguez. ECF No. 22. As a result, the only remaining claims before the Court in the FAC were the claims brought by Plaintiff Jeffrey Graham, Plaintiff Omar Reyes, and the representative portion of Plaintiff Elias Merhi's PAGA claim. *Id.* The instant Motion, brought by Defendant, seeks dismissal of the representative portion of Merhi's PAGA claim, and the arbitration of the individual claims of Jeffrey Graham and Omar Reyes. ECF Nos. 23, 25.

After the instant Motion was filed, the parties jointly moved to allow Plaintiffs to file their second ("2AC"), third ("3AC"), and fourth ("4AC") amended complaints for the sole purpose of allowing Plaintiffs Lehman, Enright, Kastel, Carpenter, Wilkinson, and Padilla in the 2AC, Williams, Benton, and Sellin in the 3AC, and Wilkins, Olson, and Underwood in the 4AC, to assert representative—non-individual—claims under PAGA, and stipulated that each new set of plaintiffs asserting claims under PAGA would arbitrate their individual claims and that the amended complaints would not raise any substantively new issues or claims not addressed in the instant Motion. ECF Nos. 29, 41, 45. The Court granted those joint motions and ordered that the individual portion of the additional plaintiffs' PAGA claims be stayed, that Defendant not be required to respond to the amended complaints, and that the non-individual PAGA claims be subject to this Court's ruling on Defendant's pending Motion. ECF Nos. 35, 42, 47. The Court also denied Plaintiffs' motion to file a fifth amended complaint ("5AC") on the basis that amendment to assert PAGA claims by Plaintiffs who had failed to meet PAGA's administrative exhaustion requirement would be futile. ECF No. 56.

In light of Plaintiffs' amended claims, the instant Motion now seeks to compel the individual claims of Plaintiffs Graham and Reyes to arbitration, and seeks dismissal of the representative PAGA claims of Plaintiffs Merhi, Lehman, Enright, Kastel, Carpenter, Wilkinson, Padilla, Williams, Benton, Sellin, Wilkins, Olson, and Underwood (the "PAGA Plaintiffs"). *See* ECF No. 48 ¶ 205; *see also* ECF Nos. 35, 42, 47. The Court addresses the

motion to compel arbitration and motion to dismiss the PAGA Plaintiffs' representative claims in turn.

## II. ARBITRATION OF CLAIMS BY GRAHAM AND REYES

The parties do not dispute that the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, governs Defendant's Motion to compel arbitration of the individual claims brought by Plaintiffs Graham and Reyes. Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[A] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. On a motion to compel arbitration under the FAA, a court must compel arbitration if: (1) a valid agreement to arbitrate exists, and (2) the dispute falls within the scope of the agreement. *Geier v. M-Qube Inc.*, 824 F.3d 797, 799 (9th Cir. 2016) (per curiam) (internal citation omitted).

It is "well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010) (internal citations omitted). Challenges to the existence of a contract must be determined by the court prior to ordering arbitration. *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140–41 (9th Cir. 1991). "[W]hile doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 743 (9th Cir. 2014) (internal quotation omitted). If the existence of an arbitration agreement is at issue, the court must "apply state-law principles that govern the formation of contracts to determine whether a valid arbitration agreement exists." *Lowden v. T-Mobile USA, Inc.*, 512 F.3d

1213, 1217 (9th Cir. 2008) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

The party seeking to compel arbitration bears the burden of proving the existence of an agreement to arbitrated by a preponderance of the evidence. *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (2023) (citing *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)). On the other hand, the party opposing arbitration is entitled to the benefit of all reasonable doubts and inferences. *Three Valleys Mun.*, 925 F.2d at 1141 (*quoting Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980)). Accordingly, a court may find that an agreement to arbitrate exists "[o]nly when there is no genuine issue of fact concerning the formation of the agreement." *Id.*

### A.    Plaintiff Reyes

"It is undisputed that under California law, mutual assent is a required element of contract formation." *Knutson*, 771 F.3d at 565; *see also* Restatement (Second) of Contracts § 3 ("An agreement is a manifestation of mutual assent on the part of two or more persons."). "'Mutual assent may be manifested by written or spoken words, or by conduct,' and acceptance of contract terms may be implied through action or inaction." *Knutson*, 771 F.3d at 565. (internal citations omitted). "Thus, 'an offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains.'" *Id.* (quoting *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 101 Cal. Rptr. 347, 350 (Ct. App. 1972)).

Defendant has not produced a signed arbitration agreement by Plaintiff Reyes. In support of its Motion, Defendant submits the declarations of Krystal Izumi, an Area Human Resources Business Partner with Lowe's [ECF No. 23-3] and Clark Moore, a Director of Human Resources Business Partners with Lowe's [ECF No. 23-4]. It also submits exemplars of the employment application, offer letter, and arbitration agreement in use at the Oceanside retail location of Lowe's at the time Reyes was hired. ECF No. 23-3 at 6-9

(employment application), 10-12 (offer letter), 13-14 (arbitration agreement). Defendant states that, according to its business records, Reyes worked at a Lowe's retail location in Oceanside, California from February 12, 2008 until February 23, 2021. ECF No. 23-3 ¶ 4. In 2008, it was Defendant's "regular business practice to provide all newly hired retail employees with an employment application containing an arbitration agreement, a hard copy offer letter, and a standalone Agreement to Arbitrate Disputes with their onboarding paperwork." *Id.* Furthermore, Defendant submits that "Reyes, like all newly hired associates at the time, would have had to apply for a position and accept an offer letter an arbitration agreement when he was first hired in 2008 as a condition of his employment." ECF No. 23 at 28; *see also* ECF No. 23-3 ¶ 5 ("Based on Lowe's regular business practices at the time . . . If an employee refused to sign the offer letter and agreement to arbitrate disputes, it was Lowe's policy and practice to withdraw the offer of employment."); ECF No. 23-4 ¶ 4 ("[P]ursuant to Lowe's company policy in 2008, a newly onboarded employee could not have commenced employment with Lowe's in California without signing an agreement to arbitrate disputes."). Defendant represents that its hard copy personnel records for Reyes have been lost. ECF No. 23 at 29. Despite the absence of a signed arbitration agreement by Reyes, Defendant argues that "Reyes manifested his assent to arbitrate all disputes with Lowe's by accepting the company's offer of employment, which, at the time, necessarily required an agreement to arbitrate all disputes with Lowe's." *Id.* at 30. Defendant contends that Reyes does not meaningfully dispute Lowe's business practices in 2008 or that he consented to arbitration by accepting employment with Lowe's at the time. ECF No. 25 at 8.

Plaintiffs submit that Reyes did not enter any kind of arbitration agreement, and that Defendant's failure to present any evidence of what documents were actually provided to Reyes preclude this court from finding that he entered into an arbitration agreement. ECF No. 25 at 11-12. Reyes declares that he was employed by Defendant from approximately

2008 until 2021, that he does not recall signing an offer letter when he commenced employment with Defendant, and that he has no recollection of entering into an arbitration agreement with Defendant. ECF No. 25-1 ¶¶ 3-4.

Defendant argues that it was its regular business practice in California to provide all new employees with an employment application, offer letter, and arbitration agreement in 2008, and to withdraw its offer of employment if the employee refused to sign them. Plaintiffs do not dispute that this was Defendant's practice at the time—for instance, by submitting declarations from other employees stating that they were onboarded without documents at the same location and time period—, or allege that Reyes never received those documents. On the other hand, Reyes declares that he has no recollection of signing an offer letter or arbitration agreement. Defendant does not put forth any evidence that Reyes actually received these documents—for instance, through declarations of any person with personal knowledge of Reyes's onboarding, or through other documents that reference Reyes's awareness or consent to such agreements—, or otherwise allege that Reyes was aware of the terms of the arbitration agreement. On these facts, the Court cannot say that there is no genuine issue of fact concerning mutual assent or the formation of a contract between Defendant Lowe's and Plaintiff Reyes, and therefore the Court "cannot decide as a matter of law that the parties did or did not enter into such an agreement." *Three Valleys Mun.*, 925 F.2d at 1141 (*quoting Par-Knit Mills*, 636 F.2d at 54).

If the making of an arbitration agreement is at issue, "the court shall proceed summarily to the trial thereof" and "[i]f no jury trial be demanded by the party alleged to be in default . . . the court shall hear and determine such issue." 9 U.S.C. § 4. Here, neither party has requested a jury trial on the issue of whether a valid arbitration agreement exists. Accordingly, it is **HEREBY ORDERED** that a one-day bench trial is scheduled for January 18, 2024 at 10:00 a.m. before this Court. The parties may conduct discovery on the specific issue of whether Defendant and Plaintiff Reyes agreed to arbitrate and are

limited to five requests for interrogatories, five requests for production of documents, and one deposition each not to exceed two hours, on or before January 4, 2024.

### B. Plaintiff Graham

While the Court looks to state law principles to determine whether an arbitration agreement exists, "federal law governs the arbitrability [of an issue] because the Agreement is covered by the FAA" where "the parties have not clearly and unmistakably designated that nonfederal *arbitrability* law applies." *Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015) (internal citations omitted). "[D]oubts concerning the scope of an arbitration clause should be resolved in favor of arbitration[.]" *Goldman, Sachs & Co.*, 747 F.3d at 743. While the court will generally determine gateway issues such as whether there is an agreement to arbitrate and whether the agreement covers the dispute in deciding on a motion to compel arbitration, those issues "can be expressly delegated to the arbitrator where 'the parties *clearly and unmistakably* provide otherwise.'" *Brennan*, 796 F.3d at 1130 (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019).

The following facts, established by Defendant's supporting declaration and documentation, are not disputed by Plaintiff. *See* ECF No. 23-2 (Declaration of Casey Morales, the Lowe's HR Director Stores for Region 8). Defendant Lowe's employed Plaintiff Graham as Customer Service Associate III in October 2007 in Elk Grove, California, then as a Pro Sales Specialist in Jackson, California beginning on October 27, 2014, and as a Pro Services Sales Specialist in Jackson, California beginning on December 6, 2014. *Id.* ¶ 5. Graham remained in the same position until his termination on June 14, 2021. *Id.* Graham signed an offer letter—which contains a section titled "agreement to arbitrate disputes"—and separate arbitration agreement, dated October 22, 2007 [*id.* at 9-

12], signed an offer letter—again including an agreement to arbitrate section—, dated October 27, 2014 [*id.* at 13-15], and Lowe's also presented an unsigned offer letter addressed to Graham, relating to the Pro Services Sales Specialist position, dated December 5, 2014 [*id.* at 16-18]. The "Agreement to Arbitrate Disputes" section of all three offer letters, as well as the signed separate agreement to arbitrate disputes from 2007, state that in consideration of Lowe's offer of employment, Graham agreed that any controversy between Graham and Lowe's arising out of his employment or termination of his employment (1) would be decided by arbitration; (2) the arbitration would be conducted pursuant to the procedures of the American Arbitration Association ("AAA") under its National Rules for the Resolution of Employment Disputes; and that (3) "[t]his agreement to arbitrate may not be changed or modified in any respect unless specifically agreed in a written agreement signed by you and Lowe's[.]" ECF No. 23-2 at 11, 12, 15, 18. The separate agreement and 2014 offer letters also specify that Graham "acknowledge[s] that a copy of the AAA National Rules has been made available for your review[.]" *Id.* at 12, 14, 17.

At issue in this case is a "2017 Agreement to Arbitrate Disputes that Lowe's emailed to certain employees in 2017" ("2017 Agreement") [ECF No. 23-2 ¶ 10], of which Defendant submits an exemplar complete arbitration agreement, opt-out form, and audit report [*id.* at 19-24 (example arbitration agreement, opt-out form, and audit report)]. Among other things, the 2017 agreement states that "[y]ou may submit a form stating that you wish to opt-out and not be subject to this Agreement To Arbitrate Disputes[,] and that "to be effective, the signed and dated opt-out form must be returned to Lowe's . . . within 30 days of your acceptance of this Agreement to Arbitrate Disputes." *Id.* at 21. It also states that "[i]f you do not opt-out of this Agreement To Arbitrate Disputes within 30 days of your acceptance of this Agreement, continuing your employment and agreeing to mutually arbitrate the claims covered by this Agreement To Arbitrate Disputes constitutes mutual

acceptance of the terms of this Agreement To Arbitrate Disputes by you and Lowe's." *Id.* Though neither Lowe's nor Graham contend that Graham signed the 2017 Agreement, they agree that Graham submitted a 2017 opt-out form which was signed and dated on May 1, 2017. *See id.* at 25-26, ECF No. 25 at 13.

Defendant argues generally that the arbitration agreements in question in the instant Motion expressly incorporate the AAA rules, that AAA Rule 6(a) delegates the issues of arbitrability to the arbitrator, and that the incorporation of the AAA rules in the arbitration agreements provides clear and unmistakable evidence that the parties intended to arbitrate threshold issues such as the enforceability of the arbitration agreement. ECF No. 23 at 23. Specific to Graham, Lowe's argues that the October 27, 2014 offer letter, containing an arbitration provision, ("2014 Agreement") remains in force despite receipt of Graham's 2017 opt-out form and requires him to arbitrate his claims. *Id.* at 25-27. More specifically, Defendant asserts that because the language of the 2017 Agreement makes clear that acceptance of the agreement is a condition precedent to effectuating the opt-out form as well as modifying the 2014 Agreement, and Plaintiffs do not assert that Graham accepted the 2017 Agreement, Graham's opt-out form cannot be effective to either the 2014 or 2017 agreements. *Id.* at 24-27. Defendant further argues that even if the Graham had accepted the 2017 Agreement and timely opted out, the 2014 Agreement would still be in place.

Plaintiffs do not assert that the 2014 Agreement was invalid. Instead, they argue that Graham received the 2017 Agreement, indicated his intent not to be bound by any arbitration agreement by submitting the opt-out form to the email address listed on the 2017 Agreement, and clearly intended to opt out of arbitration with Lowe's. ECF No. 25 at 14. Plaintiffs further assert that Graham's opt-out of the 2017 Agreement "controls any and all arbitration issues between Plaintiff Graham and Defendant and any prior agreement is no longer controlling or enforceable." *Id.* at 15. Although Plaintiffs do not contend that Graham signed the 2017 Agreement, they "do not dispute the enforceability of the 2017

Arbitration Agreement and its opt-out clause[,]" and assert that the 2017 opt-out "supersedes any prior arbitration agreements" because the 2017 Agreement "provides that it 'supplements and modifies' any prior agreement" and therefore the 2017 Agreement must prevail in any conflict with prior arbitration agreements. *Id.* Plaintiffs do not address the incorporation of the AAA rules into any of the agreements, dispute that the AAA rules were available to Graham during his employment with Lowe's, or make any case regarding the arbitrability of any of the issues before the Court.

In this case, it is undisputed that the 2014 Agreement was a valid arbitration agreement between Plaintiff Graham and Defendant Lowe's and that Graham returned the 2017 opt-out form to Lowe's via email. It is also undisputed that the 2014 Agreement expressly incorporates the AAA rules, which contain a delegation provision. The delegation provision of the AAA rules states that"[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." ECF No. 23-1 at 17 (Rule 6(a) of the AAA rules). What remains disputed is the existence, scope, and validity of the 2017 Agreement and whether Graham's opt-out was valid with respect to either the 2014 or 2017 Agreements with Lowe's.

As Plaintiffs have not "challenged the delegation provision specifically, [the Court] must treat it as valid under [9 U.S.C.] § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010). Because the parties have "delegate[d] threshold arbitrability questions to the arbitrator," the only question for the court is "whether a valid arbitration agreement exists." *Henry Schein*, 139 S. Ct. at 530. (citing 9 U.S.C. § 2); *see also McLellan v. Fitbit, Inc.*, No. 3:16-cv-00036-JD, 2017 U.S. Dist. LEXIS 168370, at *7-10. (N.D. Cal., Oct. 11, 2017) (collecting cases) (noting that both the Ninth Circuit and California courts, in line with the vast majority of the circuit courts, have

held that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent to arbitrate arbitrability without limiting that holding to sophisticated parties or commercial contracts). Here, the Court finds that a valid arbitration agreement exists: the 2014 Agreement. The Court must enforce the delegation clause according to the terms of the agreement, and "possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that that arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein*, 139 S. Ct. at 529. As such, the issues of whether the 2017 Agreement exists, is valid, or enforceable, are for the arbitrator to decide. Therefore, the Court **GRANTS** Defendant's Motion insofar as it requests to compel Plaintiff Graham's individual claims to arbitration.

**III.    DISMISSAL OF REPRESENTATIVE PAGA CLAIMS**

As noted elsewhere in this Order, the Court stayed the individual claims of the PAGA Plaintiffs pending arbitration, and the only dispute between the parties is whether the PAGA Plaintiffs can continue to pursue their non-individual—representative—claims before the Court. *See* ECF Nos. 35, 42, 47.

**A.    Background**

Prior to *Viking River*, California courts followed the rule set out in *Iskanian v. CLS Transp. Los Angeles, LLC*, which held that an arbitration agreement waiving an employee's right to bring a representative PAGA claim was unenforceable, and that the FAA did not preempt such a rule. 327 P.3d 129, 149, 150-51 (Cal. 2014); *see also Adolph*, 532 P.3d at 688 ("*Iskanian* held unenforceable an agreement that, while providing for arbitration of alleged Labor Code violations sustained by the plaintiff employee (what *Viking River* called individual claims), compels waiver of claims on behalf other employees (i.e., non-individual claims).").

Applying *Iskanian*, California "[a]ppellate courts have rejected efforts to split PAGA claims into individual and representative components." *Kim v. Reins Int'l*

12

22cv545-LL-MMP

*California, Inc.*, 459 P.3d 1123, 1132 (Cal. 2020) (collecting cases). Addressing this "secondary rule" of *Iskanian*, the Supreme Court in *Viking River* held that "the FAA preempts the rule of *Iskanian* insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate." 142 S. Ct. at 1924. In overturning that rule, *Viking River* found that an arbitration agreement may be enforced as to a PAGA plaintiff's individual claim, but that such a finding did not necessitate dismissal of the non-individual claims. *Id.* at 1925. In dicta, the Supreme Court opined that "as we see it, PAGA provides no mechanism for a court to adjudicate nonindividual PAGA claims once an individual claim has been committed to a separate proceeding" and that it understood PAGA's standing provisions as requiring maintenance of an individual claim in order to maintain a non-individual PAGA claim. *Id.* And while "the Court reasons, based on available guidance from California courts, that [the PAGA plaintiff] lacks 'statutory standing' under PAGA to litigate her 'non-individual claims' separately in state court . . . if this Court's understanding of state law is wrong, California courts, in an appropriate case, will have the last word." *Id.* (Sotomayor, J., concurring).

With direct reference to the ambiguity left by the Court's ruling in *Viking River*, the court in *Adolph* specifically held that "an aggrieved employee who has been compelled to arbitrate [individual] claims under PAGA that are 'premised on Labor Code violations actually sustained by' the plaintiff maintains statutory standing to pursue [non-individual] 'PAGA claims arising out of events involving other employees' in court." 532 P.3d at 686 (quoting *Viking River*, 142 S. Ct. at 1916). The court further explained that:

(1) PAGA standing only requires a plaintiff to be an "aggrieved employee," which is defined as someone who (a) was employed by the alleged violator and (b) against whom one or more of the alleged violations was committed, [*id.* at 686-87 (citing CAL. LAB. CODE § 2699(c))];

(2) re-litigation of a plaintiff's status as an aggrieved employee may be avoided if the court stays the non-individual claims pending the outcome

of arbitration and confirms and enters judgment on an arbitrator's finding on that issue [*id.* at 692-93];

(3) that the California Code of Civil Procedure makes clear that arbitrable and non-arbitrable issues brought under a single cause should remain in the same action, and that piecemeal resolution through the bifurcation of individual and non-individual claims across different fora is consistent with PAGA and the FAA [*see id.* at 693-94 (internal citations omitted)];

(4) that PAGA standing rests on a plaintiff's status as an aggrieved employee rather than the redressability of injuries suffered by a plaintiff [*id.* at 694]; and

(5) an aggrieved employee "does not lose standing to litigate non-individual claims by virtue of being compelled to arbitrate individual claims . . . even if the employee obtains redress for individual claims in arbitration" [*id.* at 695 (citing *Kim*, 459 P.3d at 1129)].

### B.    Discussion

Defendant argues that *Adolph*'s holding contravenes the Supreme Court's reasoning in *Viking River*, because it revives *Iskanian*'s secondary rule which precludes division of individual and non-individual PAGA claims. ECF No. 55 at 3. Relying on the Supreme Court's language indicating that individuals PAGA claims should be committed to a "separate proceeding" in the face of a valid arbitration agreement, Defendant argues that *Adolph* "flouted the FAA's severance command," instead asserting that the individual and non-individual claims are not severed from each other. *Id.* at 4. Defendant also argues that the parties are coerced into a judicial forum because "the parties cannot agree to submit *only* their individualized dispute to arbitration" in a manner incompatible with the FAA. *Id.* at 6.

Despite Defendant's arguments to the contrary, nothing in *Viking River* suggests that the requirement of arbitration in a separate proceeding requires severance of claims, or dismissal of the PAGA Plaintiffs' non-individual claims. *Viking River* explicitly noted that non-individual claims "may not be dismissed simply because they are 'representative.'"

142 S. Ct. at 1925. Furthermore, it is consistent with the prior applications of the FAA that a party be required to file a motion to compel arbitration in a district court to enforce an arbitration agreement, such that arbitration is compelled to "separate proceedings in different forums" despite maintenance of the non-arbitrable claims in the court. *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985). Likewise, it is consistent with the FAA that federal courts "may directly and effectively protect federal interests by determining the preclusive effect to be given to an arbitration proceeding" such that "neither a stay of the arbitration proceedings, nor a refusal to compel arbitration of state claims, is *required* in order to assure that a precedent arbitration does not impede a subsequent federal-court action." *Id.* at 223. Therefore, the Court finds Defendant's arguments that *Viking River* requires severance of individual and non-individual PAGA claims to be unpersuasive.

Although the Supreme Court's decision in *Viking River* suggests that a PAGA plaintiff loses standing when their individual claims are compelled to arbitration, this Court applies the holding of *Adolph* because the Supreme Court of California is the final arbiter of California law. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1108 (9th Cir. 2013) (finding that statutory standing is a question of state law); *Beal v. Missouri P.R. Corp.*, 312 U.S. 45, 50 (1941) ("The state courts are the final arbiters of [the] meaning and appropriate application [of state statutes], subject only to review by this Court if such construction or application is appropriately challenged on constitutional grounds."). The Supreme Court of California specifically granted review in *Adolph* "to provide guidance on statutory standing under PAGA" in light of the decision in *Viking River*. 532 P.3d at 687. And it held that "[w]here a plaintiff has brought a PAGA action comprising individual and non-individual claims, an order compelling arbitration of the individual claims does not strip the plaintiff of standing as an aggrieved employee to litigate claims on behalf of other employees under PAGA." *Id.* at 686. The PAGA Plaintiffs were employed by Defendant

and have alleged that at least one labor code violation was committed against them. *Adolph*, 532 P.3d at 687. Accordingly, the Court **DENIES** Defendant's Motion with respect to dismissal of the PAGA Plaintiffs' non-individual claims.

In the interest of preventing relitigation of any PAGA Plaintiff's status as an aggrieved employee, or any other issues that may overlap with claims subject to arbitration, the Court **STAYS** this action pending the outcome of individual arbitration proceedings. *See* 9 U.S.C. § 3; CAL. CODE. CIV. PROC. § 1281.4; *Adolph*, 532 P.3d at 692-93.

## IV. CONCLUSION

In accordance with the foregoing, the Court **HEREBY ORDERS**:

1. Defendant's Motion to Compel Plaintiff Graham to arbitration is **GRANTED**;

2. Defendant's Motion to Dismiss the representative PAGA claims of the PAGA Plaintiffs is **DENIED**;

3. The Court **STAYS** this action pending the outcome of individual arbitration proceedings finding either that (a) at least one PAGA Plaintiff is determined to be an aggrieved employee, or that (b) no PAGA Plaintiffs are determined to be aggrieved employees;

4. The parties are **DIRECTED** to file a joint report on **January 12, 2024**, and every 90 days thereafter, advising the Court of the status of arbitration proceedings; and

5. The Court will hold a bench trial on the issue of whether there is a valid arbitration agreement between Plaintiff Reyes and Defendant Lowe's on **January 18, 2024**. The parties are permitted to conduct limited discovery as outlined in this Order.

**IT IS SO ORDERED**.

Dated: October 13, 2023

_____
Honorable Linda Lopez
United States District Judge